```
D7HHABAC
```

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,                New York, N.Y.

4           v.                              13 Cr. 304 (MGC)

5  AHMED ABASSI,

6           Defendant.

7  ------------------------------x

8
                                            July 17, 2013
9                                           2:55 p.m.

10
   Before:
11
                   HON. MIRIAM GOLDMAN CEDARBAUM,
12
                                            District Judge
13

14                         APPEARANCES

15 PREET BHARARA
        United States Attorney for the
16      Southern District of New York
   BY:  JOHN CRONAN
17      MICHAEL FERRARA
        BENJAMIN NAFTALIS
18      Assistant United States Attorneys

19 SABRINA SHROFF
   JERROD THOMPSON-HICKS
20      Attorneys for Defendant

21 ALSO PRESENT:
   Marwan Abdel-Rahman, Interpreter

22

23

24

25

1                 (In open court)

2                 THE COURT:  Good afternoon.  Please be seated.

3                 What is the status of this matter?

4                 MR. CRONAN:  Good afternoon, your Honor.  John Cronan,

5      Ben Naftalis and Michael Ferrara for the government.

6                 Since our last appearance we have produced a

7      substantial amount of discovery.  The majority of it consists

8      of about 112 hours of recordings with an undercover law

9      enforcement officer.  A lot of these recordings are in Arabic.

10                THE COURT:  That is what I was going to ask.  Are any

11     of them in English?

12                MR. CRONAN:  Not a full recording.  There may be

13     English words here and there interspersed, but the majority is

14     in Arabic.

15                We have produced either draft or verbatim translations

16     from about 11 days of these recordings that cover March to

17     April 2013.  In particular, we have about, I would say, around

18     three hours, two to three hours -- about three hours of

19     verbatim recordings of some of the more important

20     conversations.  We are continuing to get the important

21     conversations translated and as we do that we will be producing

22     that to the defense on a rolling basis.

23                THE COURT:  Thank you.

24                I see we have two counsel from the Federal Defenders.

25     Is that right?

1              MS. SHROFF:  Yes, your Honor.  Good afternoon.
2     Sabrina Shroff and my colleague Jerrod Thompson-Hicks on behalf
3     of Mr. Abassi, who is seated to my left.
4              THE COURT:  Do you call yourself Mr. Thompson-Hicks or
5     Mr. Hicks?
6              MR. THOMPSON-HICKS:  Mr. Thompson-Hicks, your Honor.
7              THE COURT:  Mr. Thompson-Hicks.  Thank you.
8              Now, Mr. Abassi, your native language is Tunisian
9     Arabic?
10             THE DEFENDANT:  Yes.
11             THE COURT:  Very well.  And you have no difficulty
12    understanding the interpreter, is that right?
13             THE DEFENDANT:  No, I have no difficulty.
14             THE COURT:  Good.  You may be seated.
15             All right.
16             THE INTERPRETER:  Your Honor, since your Honor said
17    Tunisian Arabic, I would like to indicate I am not Tunisian.  I
18    am speaking to Mr. Abassi in standard Arabic.
19             THE COURT:  I didn't realize there was standard
20    Arabic.  That is, I understand that it is all Arabic, but there
21    are dialects in every country, as you know.  You ask an
22    Egyptian what he speaks, he won't say Arabic.  He will say
23    Egyptian Arabic.
24             Is your Arabic learned here or from your native
25    country?

1              THE INTERPRETER:  I was born in Egypt and I graduated
2    from Cairo University.
3              THE COURT:  Then you know there are a lot of Egyptians
4    who say I speak Egyptian even though it is Arabic.
5              THE INTERPRETER:  I do speak Egyptian, but I
6    communicate with Mr. Abassi in standard Arabic.
7              THE COURT:  I see.  Thank you.  Very well.
8              I have been requested, to assist counsel for
9    Mr. Abassi, by appointing an additional lawyer to assist with
10   the legal defense of Mr. Abassi, and I understand that the
11   lawyer on duty today is Lou Freeman.  I will appoint him.  So
12   either Mr. Daniels or government counsel should go down to the
13   magistrate judge's court and bring up Mr. Freeman.  I want
14   Mr. Abassi to have an opportunity to talk to him for a few
15   minutes and then I will ask if I should appoint him.
16             MR. FERRARA:  Your Honor, Michael Ferrara for the
17   government.  With the court's permission, will the court excuse
18   me to run downstairs?
19             THE COURT:  Go ahead.
20             MS. SHROFF:  Your Honor, may we use the interpreter to
21   speak --
22             THE COURT:  Yes, of course.
23             MS. SHROFF:  Thank you, your Honor.
24             THE COURT:  That is a good idea.  In fact, why don't
25   you assist counsel in talking to her client while we are

1    waiting for the new lawyer.
2             (Pause)
3             MS. SHROFF:  My client was worried that I was in
4    trouble because I was in the back.  I was explaining to him --
5             THE COURT:  I see.
6             Mr. Freeman.
7             MR. FREEMAN:  Yes, your Honor.  I have been grabbed.
8             THE COURT:  The Federal Defenders have applied for me
9    to appoint additional counsel, that is, additional cocounsel,
10   because there are two Federal Defenders representing this
11   defendant and they asked me to appoint from the CJA list, and
12   of course I followed the CJA rules and you are the one on call
13   today.
14            Now, is there any reason, number one, why I should not
15   appoint you?
16            MR. FREEMAN:  Not to my knowledge.
17            THE COURT:  Very well, then.
18            MR. FREEMAN:  It has been a minute since I heard about
19   the case.  I don't think there is a conflict.  I haven't had a
20   chance to consider that.
21            THE COURT:  I am going to give you an opportunity
22   before you answer fully to talk to your client for a few
23   minutes.  There is an interpreter in the courtroom who
24   interprets for his Arabic and I want to ask both you and he
25   whether he wishes to have you and you wish to be his counsel

1   before I appoint you.  So you may have a little private
2   conversation.
3           (Pause)
4           THE COURT:  Mr. Abassi, do you wish to have
5   Mr. Freeman represent you along with your other counsel?
6           THE DEFENDANT:  First of all, I would like to thank
7   the court for this suggestion, and I have been working with
8   Sabrina and Jerrod for the last three months on this case.
9           THE COURT:  Yes, and Ms. Shroff tells me that they
10  need additional assistance.
11          THE DEFENDANT:  Like I said to the court, I have been
12  working with them for three months.  I have developed a great
13  deal of trust in them.
14          THE COURT:  Good.
15          THE DEFENDANT:  And I am sure that they will make the
16  best decision.  I defer the decision to them.
17          THE COURT:  But you are the one who is being
18  represented and you must make your own decision.
19          MR. FREEMAN:  Your Honor, if I may speak for a moment.
20  Mr. Abassi expressed to me a concern that the relationship he
21  has with his two counsel not be disturbed, and I explained to
22  him that I will work with them, will not disturb that
23  relationship, and he seemed satisfied with that explanation of
24  how I would enter the case and what role I would play.  So I am
25  not seeing any conflict, and realizing my obligation to be an

1    attorney on the panel, it is my duty to take this case and I am

2    happy to do so.  I explained that to Mr. Abassi.

3             I understand his concern.  I am coming in from the

4    outside.  But I was a Federal Defender once myself and I know

5    Ms. Shroff.  We worked together on other cases, both while she

6    was a Federal Defender and while she was a private attorney and

7    I don't expect to have any problems working with current

8    counsel, and I leave it at that.

9             THE COURT:  Very well.  Because it is such an

10   important relationship, Mr. Abassi, that I was asking you in an

11   excess of caution whether there was something that was

12   troublesome to you.

13            THE DEFENDANT:  Your Honor, I would like to mention to

14   the court that I'm only 25 years old, 20 of which I have spent

15   as a student.

16            THE COURT:  All right.  What you are telling me is you

17   really have no basis for -- all I was asking you was whether

18   you have any objection.

19            THE DEFENDANT:  I don't have an objection.

20            THE COURT:  Very well.  Then you will get to know

21   Mr. Freeman much better as he represents you and assists your

22   other counsel.

23            THE DEFENDANT:  Thank you so much, your Honor.

24            THE COURT:  All right.  And I do appoint you now,

25   Mr. Freeman, to be cocounsel for Mr. Abassi.

1          MR. FREEMAN:  Thank you, Judge.

2          THE COURT:  Very well.

3          MR. FREEMAN:  I accept the assignment.

4          THE COURT:  Good.

5          Now the next question is this.  Ms. Shroff tells me
6     that she has been cleared for classified information.  Is that
7     true of Mr. Thompson-Hicks?  Have you gotten clearance?

8          MR. THOMPSON-HICKS:  I have not gotten clearance.

9          THE COURT:  So you will need to do that as well.

10         MR. THOMPSON-HICKS:  Yes.

11         THE COURT:  How about you, Mr. Freeman, have you been
12    cleared for classified information?

13         MR. FREEMAN:  Many years ago.  My clearance expired.
14    But I understand that because I had clearance it will be easier
15    getting clearance.

16         THE COURT:  Very well.  Then you should proceed to get
17    clearance.

18         MR. FREEMAN:  I will.

19         THE COURT:  Very well.  Now how much discovery has
20    been turned over?

21         MR. CRONAN:  Your Honor, the majority of the discovery
22    has been the approximately 112 hours of recordings I mentioned
23    earlier and then the both summary and verbatim translations of
24    those recordings.  Discovery also included reports of
25    interviews with the defendant and various other, some other

1    documentary evidence.  There is going to be more discovery.

2    Some of it we expect to be able to turn over very soon.  Some

3    of it requires additional authorization at a higher level

4    before we can turn that over.  We are working on that.

5            THE COURT:  What steps are you taking to make that

6    possible?

7            MR. CRONAN:  Sure.  We have been meeting with the

8    relevant people at the FBI, including just earlier this

9    morning, and we have another meeting scheduled for tomorrow

10   with individuals in Washington, D.C., who would be necessary to

11   give that authorization.  I would expect that we should be able

12   to produce that discovery, which will be both, I expect will be

13   unclassified and classified discovery, within a month and a

14   half from now.  So I would suggest perhaps a date in about two

15   months from now.

16           THE COURT:  So we are going over to the fall now.

17           MR. CRONAN:  I think that is accurate, your Honor.

18           THE COURT:  All right.  So by the end of September you

19   should complete discovery?

20           MR. CRONAN:  Correct, your Honor.  That is our

21   expectation.

22           I would note, your Honor, that there is a possibility

23   of a filing pursuant to the Classified Information Procedures

24   Act with the court, which would be an ex parte sealed filing,

25   but at this point we don't know for sure whether or not there

Case 1:13-cr-00304-MGC   Document 11   Filed 08/15/13   Page 10 of 18    10
D7HHABAC

1   will be a filing along those lines.  But we will of course keep
2   the court apprised of that.
3             THE COURT:  Right.  Now the discovery you are turning
4   over, at least the classified discovery, is going at the moment
5   to only Ms. Shroff.  Is that right?
6             MR. CRONAN:  That is right, your Honor.
7             THE COURT:  And Mr. Freeman will have access to it as
8   soon as he renews his clearance and Mr. Thompson-Hicks will
9   have access to it as soon as he receives clearance.
10            MR. CRONAN:  Correct, and we will make sure that
11  Mr. Freeman and Mr. Thompson-Hicks are in contact with the
12  classified information security officer, who I believe is
13  actually in the courtroom right now, so that we can expedite
14  that process.
15            THE COURT:  Good.  That is fine.
16            Are there any motions contemplated in this case?
17            MS. SHROFF:  Your Honor, without having finished
18  reviewing all the discovery --
19            THE COURT:  You don't know yet.
20            MS. SHROFF:  -- I couldn't know, but I certainly can
21  tell the court that there is at least one motion.
22            THE COURT:  Very well.  Because what I would like to
23  do is set September 30th as the deadline for discovery, that
24  is, for turning over discovery, and I would like to give you a
25  schedule for motion practice.  The only reason I ask if there

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   are any motions contemplated is to get some sense of how much
2   time is reasonable for any motions contemplated.
3           MS. SHROFF:  Your Honor, at the very least we would
4   have a motion to suppress postarrest statements.
5           THE COURT:  Very well.
6           MS. SHROFF:  And of course if the government were to
7   make an ex parte filing, we would move to have that not be an
8   ex parte filing and have access to it.
9           I am assuming when the government says that they will
10  produce discovery to us by September 30th and it will be
11  complete, I assume they are saying that it would be discovery
12  both in the original language and fairly decent translations of
13  the discovery.
14          THE COURT:  Let's just pursue that.  Do I understand
15  you really are having everything translated?
16          MR. CRONAN:  Your Honor --
17          THE COURT:  Because I assume you are not proficient in
18  Arabic.
19          MR. CRONAN:  I am not, and in terms of the 112 hours
20  or so of recordings, I do not expect us to have verbatim
21  translations of every minute of those recordings.  What we will
22  be endeavoring to do is get verbatim translations of whichever
23  portions we have identified as most relevant.  Obviously
24  anything that would come close to Brady, which I am not aware
25  of anything like that, we would have verbatim translations of,

1    but also we will be getting verbatim translations of anything
2    we will be looking to use affirmatively at trial.
3              Whether or not we are going to have all that done by
4    the end of September, I don't know for sure because it takes a
5    long time to do verbatim translations, but we do have at the
6    very least summary translations.
7              THE COURT:  Why is that?  Why does it take longer?
8              MR. CRONAN:  Your Honor --
9              THE COURT:  You have to have somebody fluent in Arabic
10   listening and translating.
11             MR. CRONAN:  That's right, your Honor, and it is not a
12   minute of words spoken to a minute of words written on the
13   page.  It takes quite a bit of time.
14             THE COURT:  You are saying these are not interpreters
15   at the UN who are simultaneous interpreters.
16             MR. CRONAN:  Correct, your Honor.  What we will
17   definitely do is we have a fair amount of -- I expect that we
18   will be able to produce some additional summary translations as
19   well, which would be a good starting point for the defense.
20             THE COURT:  What do you mean by summary translations?
21   I don't even understand what that means.
22             MR. CRONAN:  Sure.  That would be someone listening
23   to, for example, a conversation and maybe in a paragraph
24   summarize what that conversation was about, as opposed to --
25             THE COURT:  I don't understand the purpose of that.

1   Why would you have somebody summarize rather than translate
2   directly.
3            MR. CRONAN:  Because it takes a fraction of the amount
4   of time.
5            THE COURT:  Well, I understand, but I think that most
6   things should be translated verbatim.
7            MR. CRONAN:  Your Honor, a lot of the 112 hours would
8   not be stuff that we would be looking to use at trial.  I think
9   I could say with a pretty high level of confidence that
10  translating all 112 hours will not be possible by then because
11  the amount of time it will take, the number of available
12  interpreters and other pressing demands and just whether or not
13  it is a sensible use of resources to translate verbatim stuff
14  that won't be used at trial.
15           THE COURT:  I don't understand the purpose of having
16  somebody who is not a lawyer summarize what was said.
17           MR. CRONAN:  Well, your Honor, it is a summary of a
18  conversation, not a legal analysis of the conversation.
19           THE COURT:  I understand, but the actual words used
20  are important.
21           MR. CRONAN:  Mr. Naftalis brought up a good point.
22  For example, a lot of conversations were dinner conversations
23  and the conversation may not have been about anything at all
24  relevant to the charges.
25           THE COURT:  Why are you using them as discovery?

1   MR. CRONAN:  Well, it is a recorded statement of the
2   defendant.
3   THE COURT:  Once it is not translated verbatim, it is
4   no longer a recorded statement of the defendant.
5   MR. CRONAN:  Your Honor, it is an audio recording of
6   the defendant that we feel we should produce to the defense
7   even though it may not be something that we would be
8   necessarily offering at trial.  Like I said, anything we would
9   be offering at trial we will be getting translations of.
10  THE COURT:  Yes, of course.
11  MR. CRONAN:  And we will do that as expeditiously as
12  possible.  But just from dealing with Arabic translations in
13  other cases --
14  THE COURT:  But you are saying in any event then the
15  things that you are not translating verbatim you will turn over
16  verbatim and perhaps those you can turn over more quickly so
17  the defendant can translate them.
18  MR. CRONAN:  Your Honor, yes.  We already have turned
19  over the actual audio recordings to the defense.
20  THE COURT:  Oh, you have.
21  MR. CRONAN:  And we have made contact with the jail to
22  ensure that the defendant will be able to listen to those
23  recordings in his cell.  He won't be limited to having to go to
24  the prison library.
25  THE COURT:  I understand.  Then that you can do on a

1     rolling basis.
2                MR. CRONAN:  And we have done that, your Honor.
3                THE COURT:  I see.  Good.
4                MR. CRONAN:  There may be additional recordings and
5     once we have those, those will be turned over.
6                THE COURT:  Those will be turned over in the same way.
7                MR. CRONAN:  Correct, your Honor.
8                THE COURT:  So you are only summarizing what you have
9     no intention of using.  Is that right?
10                MR. CRONAN:  Your Honor, we are giving to the defense
11     the audio recordings for the defense to listen to of all the
12     recordings.
13                THE COURT:  In their entirety.  Those have all been
14     turned over.
15                MR. CRONAN:  Stuff we may use and stuff we may not
16     use.
17                THE COURT:  All right.
18                MR. CRONAN:  With respect to stuff we intend to use at
19     trial, we will be getting verbatim translations.
20                THE COURT:  Good.  You should turn those over first.
21                MR. CRONAN:  Yes, your Honor.
22                THE COURT:  And then how much remains?
23                MR. CRONAN:  Your Honor, right now we have about three
24     hours of excerpts of verbatim translations, written out
25     verbatim translations that have been turned over.  We have more

1   detailed summary translations of many other conversations.  The
2   process right now is to obtain more verbatim translations of
3   the other materials.
4             THE COURT:  Yes.
5             MR. CRONAN:  So that is going to be an ongoing process
6   and we are going to be producing that.
7             THE COURT:  As you get it.
8             MR. CRONAN:  Correct, your Honor.
9             THE COURT:  And on a rolling basis.
10            MR. CRONAN:  Absolutely, your Honor.
11            THE COURT:  You have reason to think that that will
12   not be completed by the end of September?
13            MR. CRONAN:  Your Honor, we will need to engage and
14   speak with the translation services we use to figure out what
15   their timetable would be.
16            THE COURT:  I would like the answer.
17            MR. CRONAN:  Yes, your Honor.
18            THE COURT:  Good.  Because then I will set a motion
19   schedule.  So what I will do is set a time for a status report
20   and at that time I will set a date for motions.
21            If it is agreeable to counsel, I will set Tuesday,
22   October 1st -- wait just a moment.  Monday, September 30 at
23   10:30 in the morning, if that is agreeable, for a status
24   conference, at which time we will know very much more clearly
25   exactly what has been done and what remains to be done.

1            MR. CRONAN:  Yes, your Honor.

2            THE COURT:  Very well.  I take it counsel have no
3    problem with that --

4            MS. SHROFF:  No, your Honor.

5            THE COURT:  -- date and time.

6            MS. SHROFF:  I checked with my cocounsel, your Honor,
7    and it is a fine date and time.

8            THE COURT:  Thank you.

9            Is there anything further?

10           MR. CRONAN:  Your Honor, the government lastly would
11   move to exclude time pursuant to the Speedy Trial Act from
12   today until September 30, 2013.  The reason for the exclusion
13   is that the ends of justice served by the continuance outweigh
14   the interests of the public and the defendant in a speedy trial
15   because the additional time will allow the defense to review
16   the discovery that has been produced, the government to
17   continue its rolling-basis production of discovery and the
18   defense to review that discovery, and for the defense to
19   consider any motions based on the discovery they have received.

20           THE COURT:  Mr. Abassi, did you hear what the
21   prosecutor just said?  He is asking me to exclude the time
22   between now and the end of September when we will have a status
23   conference from what we call the speedy trial clock, which
24   means I am asking you, do you agree that the time between now
25   and the end of September, for your counsel to prepare your

1    defense, outweighs in the interest of justice both your right
2    to a speedy trial and the public's right to a speedy trial.
3              THE DEFENDANT:  I agree.
4              THE COURT:  Very well.  I will adopt that finding and
5    on that basis I will exclude the time between now and September
6    30th from the speedy trial clock.
7              You may be seated.
8              Is there anything further?
9              MR. CRONAN:  Not from the government, your Honor.
10             MS. SHROFF:  No, your Honor, not from the defense.
11             THE COURT:  Very well.  Let me just ask one more
12   question of the government.  You have already said you would
13   facilitate the arrangement for security clearance for counsel.
14             MR. CRONAN:  We will put counsel in contact with the
15   office that handles it.
16             THE COURT:  Thank you very much.  Very well.
17             You are all excused.
18             (Adjourned)