E1u1abac

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          13-CR-304 (MGC)

5    AHMED ABASSI,

6                  Defendant.              Conference

7    ------------------------------x

8                                          New York, N.Y.
                                           January 30, 2014
9                                          11:32 a.m.

10
     Before:
11
                     HON. MIRIAM GOLDMAN CEDARBAUM,
12
                                           District Judge
13

14                          APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     BY:  MICHAEL J. FERRARA, ESQ.
17        BENJAMIN NAFTALIS, ESQ.
          Assistant United States Attorney
18
     FEDERAL DEFENDERS OF NEW YORK INC.
19        Attorneys for Defendant
     BY:  SABRINA SHROFF, ESQ.
20

21   ALSO PRESENT:  MARWAN ABDEL-RAHMAN, Arabic Language Interpreter

22

23

24

25

E1u1abac

1              (In chambers)

2              THE COURT:  Very well.  What is the status of this

3    case?

4              MR. FERRARA:  Good morning, your Honor.  Michael

5    Ferrara and Benjamin Naftalis for the government.

6              At this point, your Honor -- well, I guess over the

7    last several months the government has been collecting and

8    producing discovery.  I know your Honor's been apprised of two

9    letters involving discovery that Ms. Shroff sent over to

10   chambers prior to the conference today.

11             I'll be quite frank with the court.  There have been

12   some complications with the collection and production of the

13   discovery.  The unclassified discovery went out relatively

14   smoothly.  And just to give -- just to sort of remind your

15   Honor, the allegations in this case arise from in large part

16   Mr. Abassi's stay in the United States for a few weeks in say

17   April of last year.  He met with an undercover -- unbeknownst

18   to him, he met with an undercover several days, dozens of days,

19   over the course of that month, and he was recorded in the

20   course of doing so.  They primarily -- the undercover and

21   Mr. Abassi primarily spoke to one another in Arabic, and there

22   are often what we call sort of redundancies in the recordings.

23   That is to say, there may be multiple recording devices

24   happening simultaneously in order to ensure that if one

25   malfunctions, others are capturing the conversation.

E1u1abac

1          THE COURT:  The undercover was wearing a wire?

2          MR. FERRARA:  The undercover was wearing,

3     essentially -- essentially wearing a wire at times.  At other

4     times he was speaking into his cellphone, which was recorded at

5     times.  Other times he was in a car or in places where other

6     recording devices might have been.  And so we --

7          THE COURT:  Well, how many different recording devices

8     were used?

9          MR. FERRARA:  Well, if your Honor wants a specific

10    answer, then we would have to go into a classified proceeding.

11    I can't answer your Honor's question precisely.  But suffice it

12    to say that there were multiple recordings of various

13    conversations.  So we produced -- we had been collecting and

14    producing the unclassified recordings.  And like I said, we

15    produced -- I don't want to say hundreds of hours, but it may

16    very well be close to that.  It may be a hundred or so hours of

17    recordings.

18          THE COURT:  Now who classified the documents?

19          MR. FERRARA:  Well, we produced unclassified

20    recordings.  The classification of some of the other material

21    arose from the nature of how the material was seized and

22    applications were made in order to do that.

23          Oh, I'm sorry.  To the extent, your Honor -- it was

24    the FBI that was seeking some of those authorizations, if

25    that's what your Honor's asking.  So when it was created, it

E1u1abac

1    was classified at that time.  It wasn't later classified.  The

2    techniques were classified that were being used.  And again, if

3    your Honor wants to sort of at some point have a classified

4    update, we can do that, but I think the point of all this is to

5    say that we have produced dozens and dozens of recordings to

6    the defense.  And we produced that both -- and that's audio and

7    video, and we produced the recordings in an unclassified format

8    and we also produced them in a classified format.

9              THE COURT:  What is the format that makes them

10   classified?

11             MR. FERRARA:  Well, I shouldn't have said -- it's not

12   the format.  I just mean to say there were some recordings that

13   were unclassified that we produced, and others that were

14   classified that we produced.

15             Now the primary problem stemmed from -- it took quite

16   longer than we expected -- because of the just sheer amount of

17   the recording, it took longer than we had expected to get

18   authorization to turn some of that material over, so as

19   Ms. Shroff notes, to the extent your Honor had set a September

20   date deadline for discovery, we certainly produced quite a bit

21   of material in advance of that, but I think all of the

22   classified discovery was produced after that date due to the

23   difficulties of obtaining that authorization.  After

24   Ms. Shroff --

25             THE COURT:  Who gave the authorization?

E1u1abac

1          MR. FERRARA:  The FBI.  So at that point, after

2     Ms. Shroff had reviewed -- to her credit, I honestly think

3     Ms. Shroff and her team have reviewed every single minute of

4     the discovery because we talked about it at length.  Ms. Shroff

5     sent over a letter requesting additional discovery, much of

6     which we do not think she is entitled to.  However, it prompted

7     us to look for other things in hopes -- well, it prompted us to

8     look for things that perhaps we had missed.  We wanted to, of

9     course, be sure we had given everything over, and it turned out

10    in fact some things had been missed.  At that point we asked

11    Ms. Shroff to -- and I believe she has agreed to a CIPA

12    protective order, a classified discovery protective order,

13    which we then forwarded to the court I want to say two days

14    ago.  I've also brought a copy today.  Once your Honor enters

15    this order, which the parties consent to, we will then produce

16    what we believe is the completion of the classified discovery.

17    And again, we have that ready to go upon the court's entry of

18    that order, and of course your Honor doesn't have to sign that

19    this second, but as soon as the court is able to, we will turn

20    over that additional material.

21          THE COURT:  This is an undisputed matter.

22          MS. SHROFF:  Your Honor, we've agreed to it so that --

23    we've been waiting almost a year for the discovery so --

24          THE COURT:  I understand.  But whatever your motive --

25          MS. SHROFF:  Yes, it's undisputed.

E1u1abac

1            THE COURT:  -- there's no question it's undisputed.

2       Okay.

3            MR. NAFTALIS:  So Ms. Shroff has executed that as

4       well.

5            MS. SHROFF:  Yes.

6            MR. FERRARA:  So that's the sort of update on the

7       discovery front, your Honor.

8            And then as to plea negotiations --

9            THE COURT:  Originally I thought I had been told that

10      Mr. Abassi was going to enter a plea.

11           MR. FERRARA:  Well, your Honor mentioned that at the

12      first conference, but that -- I apologize.  That should not

13      have been relayed to the court.  I don't know how your Honor

14      got that message.  That was never the case here, that

15      Mr. Abassi intended to plea.  Perhaps -- if that was a

16      miscommunication from the government, then I apologize, but

17      that was not the case and your Honor was wrongly informed of

18      that.  But I will say --

19           THE COURT:  We're not talking about someone who is

20      cooperating with the government.

21           MR. FERRARA:  No, absolutely not.  Correct.

22           Right.  Mr. Abassi is not cooperating with the

23      government.  But we are having, your Honor, what I would

24      call -- and perhaps Ms. Shroff will disagree, but I think we're

25      having productive discussions towards a resolution of this

E1u1abac

1    case.  We had made Ms. Shroff an offer, and I won't, of course,

2    involve the court in the details of this, but we had made

3    Ms. Shroff an offer.  She -- Mr. Abassi, through Ms. Shroff,

4    rejected that initial offer and came back with certain other

5    ideas, which we are now considering, and we hope to have a -- I

6    guess hers was a counteroffer -- a counter-counter to

7    Ms. Shroff this week or next.  So I think, your Honor, quite

8    frankly, that the discussions have been very productive, and

9    I'm relatively -- I'm still hopeful that this case could

10   result -- could be resolved pretrial in a way that both parties

11   find fair.

12          So that's where we're at, your Honor.  I think the

13   only thing the government thinks we ought to do -- well, maybe

14   I'll let Ms. Shroff speak and then we can propose --

15          THE COURT:  Very well.

16          MR. FERRARA:  I'll wait to hear what Ms. Shroff has to

17   say and then --

18          THE COURT:  Ms. Shroff?

19          MS. SHROFF:  Good morning, your Honor.

20          Your Honor, there are a couple of points with which we

21   disagree, and if I could just tell the court what those are.

22          THE COURT:  Yes, please.

23          MS. SHROFF:  So the first one is to distinguish

24   between what is produced to us as discovery and what we believe

25   Mr. Abassi's entitled to under Rule 16.  So if there is a

E1u1abac

1    conversation on a particular day with, let's say, the

2    government's undercover and it's recorded in three different

3    methods or three different equipments, we're not unreasonable.

4    We're not asking for all three equipments.

5           THE COURT:  You'd like one of them.

6           MS. SHROFF:  We'd like the one and we would like an

7    affirmation from the government that that one is the most

8    complete so there are no dropped sentences, there are no

9    dropped words.  So if they used a cellphone, a body wire, and a

10   home recording device -- and just so the court knows, that

11   could very well be the case here because Mr. Abassi was made to

12   live in the co-op in the undercover's home, and we have good

13   reason to believe that the home was bugged.  That would be the

14   best recording to get.  So that's the one issue about

15   recordings.

16          But then there's also a secondary issue.  The

17   secondary issue is whether or not we have a complete recording

18   and then a complete translation of the recording, which we do

19   not have and the government has refused to give us because

20   their view is, they're not obliged to give it to us and they

21   are not obliged to bear the cost; they only have to give us

22   what they are planning to use at trial.  So obviously they're

23   not going to use statements that my client made that would help

24   him.  For example, when they ask him to do something heinous,

25   my client says, "No, I'm not going to do it."  So if my client

E1u1abac

has said that once, the government has translated and given it

to me once.  But if I'm to represent Mr. Abassi at either plea

negotiations or at a trial, the fact that he repeatedly told

their undercover officer that no, he would not go and blow up a

building and he would not do anything in the present time is

very, very important.  It's important because it would

obviously affect plea, it would affect how a trial proceeds,

how a jury's impacted, and god forbid he's convicted, it would

certainly impact the court at sentence.  So that -- and I'm

really -- this is not a forum where I'm trying to say the

government's being this or the government's being that.

Assuming all good faith to the government, Mr. Abassi still

doesn't have all of that information, and that's the

nonclassified stuff.

          And, you know, we've e-mailed the government several

times.  We're very cognizant that they have a workload, they

have only so many Arabic interpreters, there are three other

cases before other judges going to trial.  Mr. Abassi's sitting

in jail.  It's tough on him is an understatement.  And if we

could, we would like this over.  So we most respectfully ask

that the court set a firm deadline by which the government must

comply regardless of the cost, at least as to giving us all of

the unclassified discovery in a way that the defense can

properly use because, you know, there are two Supreme Court

cases that say now that we have an obligation not just to be

E1u1abac

1    effective at trial but to be effective at plea.  To be

2    effective at plea, I need all the information.  That's

3    information that even the government's conceding I'm entitled

4    to.

5              Then there is now --

6              THE COURT:  Wait just one moment.  Do I understand the

7    government argues that Mr. Abassi is not entitled to a

8    recording of all of his statements, there are only certain

9    statements he's entitled to?

10             MR. FERRARA:  Absolutely not.  That is not our --

11             MS. SHROFF:  The transcription, your Honor.

12             MR. FERRARA:  Just to be clear, we have given

13   Ms. Shroff all of the recordings that we have, save this latest

14   classified discovery that we have to produce upon entry of this

15   order.  We've given her all of the recordings we have.  If

16   there's multiple recordings, we've given her the multiple

17   recordings of the different ways so she can hear it herself.

18   We have given -- for each recording, we have given a running

19   summary that was created by interpreters as they heard it, as

20   it was actually happening.  We've also given summaries of the

21   calls, of the recordings themselves.  Detailed summaries.

22             Now we have, since we first saw the court, been asking

23   Arabic interpreters to transcribe verbatim certain portions of

24   those calls.  Now I don't speak Arabic.  What we've asked, what

25   we've asked is for the agents to review, using the summaries

E1u1abac

1   and their memories of the events, to review portions of the

2   calls that would be useful either to the defense or to the

3   government and we then had those farmed out for verbatim

4   transcription, which we provided to Ms. Shroff on a rolling

5   basis, and I think she's gotten about a dozen of those or so.

6   And they're only portions, that's true, but your Honor, there

7   are literally just -- Mr. Abassi was in New York City for maybe

8   a little under a month.  He met with the undercover almost

9   every day.  They met for multiple hours in the day.  It would

10  be overwhelming to ask for each of those meetings to be

11  transcribed in full when much of their discussions are

12  irrelevant.  Sometimes they go out to dinner and they talk

13  about the food.  There's nothing in the law that says that we

14  have to produce verbatim transcriptions of every recording.

15  The defense can do that.  They can apply for funds to the

16  court.  If she has -- and I've offered Ms. Shroff, I've said to

17  Ms. Shroff, based on the summaries, or based on conversations

18  with your client, if you'd like me to have this part or this

19  part transcribed, I'm happy to farm out some other portion, but

20  we are not going to ask -- we do not have the resources to have

21  every second of dozens of hours, hundreds, potentially, of

22  hours of recordings farmed out when much of the information is

23  apropos of nothing.  But Ms. Shroff has all of it and of course

24  can have certain things transcribed if she'd like, or if she

25  wants to target limited things, we would be happy to farm out

E1u1abac

1    those portions for her.

2              MS. SHROFF:  The reason my client talked *ad nauseam* to

3    the undercover is because they had the undercover talking *ad*

4    *nauseam* to my client.  That is how the government chose to set

5    up this case.  If they chose to set it up this way, the least

6    you can do to a defendant being hauled into a federal court in

7    the United States of America is give him that discovery.  If

8    you didn't want to set it up that way, you didn't want to

9    produce it that way, you shouldn't have talked to him about

10   dinner.  But that's the whole crux of the case.  Their crux of

11   the case is that this is a man who came here only for a

12   specific purpose and we're telling you, no, that's not why he

13   came here at all, and all of these other conversations that he

14   has, when he has conversations with the undercover saying,

15   "Listen, I'd really like to go back to my wife, my wife and I

16   are wanting to have children, I'd like to get a job, I'd like

17   to apply for a job, I'd like to go back to Canada, will you

18   help me get to Canada," all of those things may not certainly

19   be the crux of their case, but they certainly go to show that

20   he does not have the mind-set that they want him to have.  If

21   the government's not going to produce it, at the end of the

22   day, if the court's not going to order that, which ruling we

23   would obviously respect, our office will have to find a way to

24   fund that.  But the problem so far has been that I do not

25   believe we still have all of the calls in all of the --

E1u1abac

```
1              THE COURT:  That's the first question.

2              MR. FERRARA:  As I mentioned, your Honor, the defense

3    does not as of now, but once your Honor orders this protective

4    order, then we will be in a position to say that all the calls

5    that we know exist, all the recordings that we know exist have

6    been produced, upon --

7              THE COURT:  That you will immediately produce

8    everything.

9              MR. FERRARA:  The rest.

10             MR. NAFTALIS:  They're ready.  We have it already on

11   CDs.  It's ready to turn over as soon as the order is entered.

12             THE COURT:  You agree to this order.

13             MS. SHROFF:  I've agreed to the order, your Honor.

14             THE COURT:  So you have no objection to that being

15   done.

16             MS. SHROFF:  No.  I would like it to be done.  In

17   their response to me, number 28, as Ms. --

18             UNIDENTIFIED SPEAKER:  That's our letter.  Sorry.

19             MS. SHROFF:  According to our review of the discovery,

20   and we informed the government on December 10th, we have 48

21   phone calls for which we have recordings but no translations or

22   summaries; nothing at all.

23             THE COURT:  And that's what you're interested in.

24             MS. SHROFF:  That is the one thing I'm interested in.

25             The other thing I'm interested in is making sure that
```

E1u1abac

1   the government has given us all of the recordings which -- and

2   some of them I still think they haven't given to us because

3   those recordings keep coming up during conversations, and I

4   think at the end of the day Mr. Ferrara would acknowledge he

5   hasn't -- the government hasn't yet given those to us.  That is

6   putting aside the whole issue of classified discovery.  That is

7   not classified.  This is unclassified stuff.

8          And then there are several other discovery-related

9   requests that we have made, which may or may not technically

10  fall within Rule 16, but if the case is this serious, many a

11  judge has ordered the government to produce it or at least

12  produce it before it would normally be produced so that the

13  defendant is properly represented during plea negotiations.  So

14  far we seem to be in agreement on only one issue.  The only

15  thing they have agreed to produce to us so far is the phone

16  calls which they haven't yet produced to us -- am I wrong or --

17          MR. FERRARA:  I'm sorry.  I missed the last part.

18          THE COURT:  The phone calls which you have not yet

19  produced.

20          MS. SHROFF:  And 48 phone calls for which you've given

21  us no transcription.

22          MR. FERRARA:  Your Honor, again, we are not required

23  under the law to provide them with transcriptions of the calls.

24  We have done so for most of the calls because we are attempting

25  to help however we can, and if Ms. Shroff has portions of the

E1u1abac

1    calls that she would like transcribed, we're happy to do so.

2    She has all -- she has almost all of the calls, with a very

3    small exception of a few classified calls that we will produce

4    promptly upon the entry of that order, and then we would

5    represent to the court at that point that all of the calls that

6    we know of have been turned over.

7             And when I say calls, I shouldn't say calls.  All the

8    recordings, because many of the conversations -- most of the

9    conversations were in person.

10            And your Honor, I worry that the parties are wasting

11   your Honor's time a little bit here.  Ms. Shroff has provided

12   us a detailed letter.  We have responded point by point.  We

13   don't think she's entitled to much of it.  If she wants to make

14   a motion, we're happy to respond to that.

15            THE COURT:  But I thought you just told me that if I

16   sign this order, you will produce all of them.

17            MR. FERRARA:  Well, not all of the things in

18   Ms. Shroff's letter.  Ms. Shroff asked for things that in the

19   government's view are clearly not embraced by Rule 16, *Brady,*

20   *Giglio*, or any other theory of discovery.  She's asking for

21   things in here that are outside the bounds of discovery that we

22   do not intend to produce.

23            THE COURT:  The defendant is not entitled to all his

24   prior statements?

25            MR. FERRARA:  We have produced all his prior

E1u1abac

1    statements or upon the entry of this, we will have produced.

2    I'm talking about other things, your Honor, things that are

3    not --

4              MS. SHROFF:  I don't agree.  I don't think the

5    government has produced all of the defendant's postarrest

6    statements.  I think the government has produced the one single

7    version of all the defendant's postarrest statements, so if the

8    defendant's postarrest statements, for example, were quoted in

9    a memo to the head of the FBI, the government has chosen not to

10   produce that document to us, which we've specifically asked for

11   but the government has chosen not to give us.

12             THE INTERPRETER:  Your Honor, I cannot keep up with

13   this speed.

14             MS. SHROFF:  Sorry.  So technically the government has

15   complied with his postarrest statements, right?

16             THE COURT:  You're being asked if you have produced

17   all of the defendant's statements after his arrest.

18             MR. FERRARA:  Yes, your Honor, we have.  What

19   Ms. Shroff is suggesting is that she is somehow entitled to us

20   quoting from reports when we discuss the case internally.  She

21   is not entitled to that.  We have produced to her reports and

22   notes of that post -- of the postarrest statement.  Absolutely,

23   yes.

24             MS. SHROFF:  We don't have reports and notes.  We do

25   not have the handwritten notes of any of Mr. Abassi's

E1u1abac

postarrest statements.  We've asked for them.  We weren't given

them.  Those notes are absolutely not produced to us.  We

specifically asked for them.  We don't have them.

        The other thing, for example, we've asked for is,

during Mr. Abassi's questioning, the FBI agents allowed

Mr. Abassi to make phone calls to his wife and only allowed him

to talk to his wife for as long as he would then compensate

them by talking to them further.  We've asked for those phone

logs.  We haven't gotten them.  We have asked for those

recordings.  We haven't gotten them.  This is all discovery.

We're entitled to this discovery.  And even if we're not

entitled to it technically under Rule 16, this is a serious

matter and we should be able to have this information to

properly come up with a plea offer.

        MR. FERRARA:  Your Honor, if I'm mistaken -- I've made

a note to myself -- I will of course make sure to produce those

notes.  And if I'm in error, we will correct that immediately.

        THE COURT:  All right.  They will produce them.

        MR. FERRARA:  And if those calls between Mr. Abassi

and his wife were recorded, we'll produce those as well.

        MS. SHROFF:  We'd like the phone logs, your Honor.

        MR. FERRARA:  I don't know if those were recorded,

your Honor.

        MS. SHROFF:  That may be, but there are phone logs

that show, in the interrogation room where Mr. Abassi was being

E1u1abac

1   held for seven days in a row, he was made to call his wife and

2   then the FBI would cut off the calls.  We would like the phone

3   log for those calls.  We'd like the phone -- the phone -- yeah,

4   the recording -- the log.  Just the plain old log.  You know --

5           MR. FERRARA:  I'm happy to discuss this.

6           THE COURT:  These are matters on which you should be

7   able to agree.

8           MR. NAFTALIS:  Your Honor, some of these are the first

9   time we're hearing these, and we will look into it.  If there

10  are phone logs, if there are recordings and if they exist,

11  we'll produce them.

12          THE COURT:  Fine.  Very well.  That's not in dispute.

13          MS. SHROFF:  Okay.

14          MR. FERRARA:  But again, just --

15          THE COURT:  Always quit when you're ahead.

16          (Defendant and his counsel conferring)

17          MS. SHROFF:  Your Honor --

18          THE COURT:  Mr. Abassi says that he made many more

19  calls than what was produced.

20          MR. FERRARA:  Two responses to that, your Honor.

21  Some, as -- three responses.

22          First, we either have or will within two days have

23  produced all of the calls that we have, number one.

24          Number two.  I have as a courtesy attempted to produce

25  all of the unclassified material directly to Mr. Abassi at his

E1u1abac

```
 1   facility.  We have sent over hard drives and discs.  I hope he
 2   has received all of that and I have -- and I know there has
 3   been some problems, but if he has not received some of that, of
 4   course we will endeavor to get it to him.
 5          Number three.  There is classified discovery that
 6   Mr. Abassi is not entitled to review at the prison, which is
 7   all I can say about that right now.
 8          MS. SHROFF:  Okay.  So in two days, your Honor, we
 9   should have 200 phone calls, one way or another.  By "we," I
10   mean counsel, cleared counsel.  And if not, we'll come back to
11   the court on that particular issue.
12          THE COURT:  Very well.  I certainly can't decide what
13   you have or haven't done.  Well, if that's the stumbling block,
14   you're quite right and we should go forward and see what
15   happens, what you receive.  There's no purpose served in
16   discussing what may be resolved.
17          MS. SHROFF:  That's correct, your Honor.
18          MR. FERRARA:  If your Honor wants to set another
19   conference date for 30 or 45 days just to take this back up, at
20   that point Ms. Shroff will have had a chance to review what we
21   produce either today, tomorrow, or Monday.
22          (Defendant and counsel conferring)
23          MS. SHROFF:  I'm sorry.  Go ahead.
24          MR. FERRARA:  I just proposed possibly a conference to
25   see if these issues have been resolved after the next
```

20

E1u1abac

1    production.

2           MS. SHROFF:  That's fine, your Honor.  We can come

3    back whenever the court would like us back.

4           THE COURT:  I need my calendar.

5           THE CLERK:  Yes, Judge.

6           THE COURT:  How long is it going to take to check on

7    that you have produced or not produced --

8           MR. FERRARA:  Well, things like notes, your Honor,

9    will take me a matter of hours, but what I think is -- what we

10   want to be at least -- what I think we want to know most

11   importantly for the next conference is, is there still a

12   dispute about calls that have been produced or not produced or

13   other potential discovery that has or has not been produced in

14   this next batch, so -- which will take Ms. Shroff a little bit

15   of time to review.  It's not going to be an insubstantial

16   amount of material that she's going to receive, and so it would

17   just be -- we sort of defer to Ms. Shroff on how she wants to

18   do that, whether --

19           THE COURT:  Very well.

20           MR. FERRARA:  I think it should be less than maybe 30

21   days, but I defer to Ms. Shroff.

22           MR. NAFTALIS:  Ms. Shroff, it's about 15 DVDs' worth

23   of material.

24           MS. SHROFF:  Okay.

25           MR. NAFTALIS:  Just for your timing.

E1u1abac

1           THE COURT:  What is your estimate of how long it will

2   take you to review this?

3           MS. SHROFF:  30 days?  We may need more, your Honor,

4   so should I give an outer date or it would be better if I asked

5   for an adjournment?

6           THE COURT:  Well, let's try to be reasonable, yes.

7   It's to your advantage to resolve this matter as quickly as you

8   can.

9           MS. SHROFF:  Yes, your Honor, that's true.

10           (Defendant and his counsel conferring)

11           THE COURT:  Shall we set February 27?

12           MS. SHROFF:  That's fine, your Honor.

13           THE COURT:  Which will give you almost a month.

14           MS. SHROFF:  That's fine.

15           MR. NAFTALIS:  Your Honor, what time on the 27th?

16           THE COURT:  At 11 a.m.

17           MS. SHROFF:  Your Honor, before we adjourn today, I

18   just want to give the court some sense that we believe we are

19   missing calls, not just transcripts but actual calls for the

20   dates March 29th, 30th, 31st, April 2nd, and

21   April 17th.

22           THE COURT:  All right.  That's certainly a help if you

23   identify that.

24           MR. FERRARA:  By the next conference, your Honor, we

25   hope to either have produced those calls or to have told

E1u1abac

1    Ms. Shroff in no uncertain terms that we do not believe they

2    exist.

3                THE COURT:  Very well.  Then this matter is adjourned.

4                MR. FERRARA:  Your Honor, the government moves

5    pursuant to 18 U.S.C. Section 3161(h)(7)(A) to exclude the time

6    between now and February 27th from the operation of the

7    speedy trial clock.  As your Honor's heard, there's a massive

8    amount of discovery in this case, largely in Arabic, recordings

9    and --

10               THE COURT:  And I have no reason to think that the

11   defendant doesn't agree that the time should be excluded.

12               MS. SHROFF:  Your Honor, we don't challenge the speedy

13   trial clock.

14               THE COURT:  No, but I want to be sure that Mr. Abassi

15   understands that what's being asked is that the trial be put

16   over for a longer period in order to get this material, that

17   the need for that material, the time required for it,

18   outweighs, in the interests of justice, a speedier trial.  Do

19   you agree with that?

20               THE DEFENDANT:  Yes.

21               THE COURT:  Very well.  Then I will adopt that and

22   exclude the time between now and Thursday, February 27th, 11

23   in the morning.

24               MR. FERRARA:  Nothing further from the government,

25   your Honor.

E1u1abac

1          MS. SHROFF:  Your Honor, given the government's

2     insistence that they will not translate all of the calls in

3     their entirety, the defense will submit a letter to the court

4     seeking additional funds to allow that to happen.  We'll set

5     forth our request in as much detail as we can.

6          THE COURT:  Good.

7          MS. SHROFF:  Thank you, your Honor.

8          THE COURT:  Very well.  Good luck to everybody.

9          MR. FERRARA:  You too, your Honor.  Good to see you.

10          MR. NAFTALIS:  Good to see you.

11          THE COURT:  Thank you.

12                              o0o

13

14

15

16

17

18

19

20

21

22

23

24

25