E63FABAP

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              13 CR 304 (MGC)

5    AHMED ABASSI,

6              Defendant.

7    ------------------------------x

8                                             New York, N.Y.
                                              June 3, 2014
9                                             11:30 a.m.

10
     Before:
11
                     HON. MIRIAM GOLDMAN CEDARBAUM,
12
                                              District Judge
13

14                          APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     MICHAEL FERRARA
17   BENJAMIN NAFTALIS
          Assistant United States Attorney
18
     SABRINA P. SHROFF, ESQ.
19        Attorney for Defendant

20

21   Also present:

22   MARWAN ABDEL-RAHMAN

23   Arabic Interpreter

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

E63FABAP

1           (Case called)

2           (In chambers)

3           MR. FERRARA:  Good morning, your Honor.  Michael

4    Ferrara for the government joined by Benjamin Naftalis on

5    behalf of the United States.  We have, your Honor, just to sort

6    of bring your Honor up to speed since the last time we were

7    here, as your Honor will remember we had been having productive

8    plea negotiations in this case and in fact I understand that we

9    are here today, my understanding, for Mr. Abassi to enter a

10   plea of guilty to a superseding information.

11          THE COURT:  All right.  Well, I don't have to tell

12   you, we all know that our Constitution does not permit a plea

13   to an information.  You have to waive indictment.

14          MR. FERRARA:  Absolutely so, your Honor.  And in fact

15   we have that document here.  Mr. Abassi and Ms. Shroff executed

16   it just prior to this proceeding so we have an original, I

17   believe five originals of the waiver of indictment here in

18   front of your Honor.  I also have an original --

19          THE COURT:  I don't need five.  Just one is fine.

20          MR. FERRARA:  Thank you, your Honor.  Let me help

21   there.  Here is a waiver of indictment by Grand Jury, your

22   Honor.

23          THE COURT:  Under our Constitution, Mr. Abassi, you

24   may not be tried for a crime unless a Grand Jury indicts you

25   for that crime.

E63FABAP

|    |                                                                              |
|----|------------------------------------------------------------------------------|
| 1  | MR. FERRARA:  Your Honor, I am also now handing to the                        |
| 2  | Court a signed original superseding information.  This is S1 13               |
| 3  | CR 304.  It charges Mr. Abassi in two counts.  Count One                      |
| 4  | charges Mr. Abassi with making a false statement to immigration               |
| 5  | officials on or about March 18, 2013 and Count Two charges                    |
| 6  | Mr. Abassi with fraud in connection with immigration documents                |
| 7  | in or about April 2013, specifically that he made a false                     |
| 8  | statement on an application for a U.S. green card, and as I set               |
| 9  | out on the record at the last conference, your Honor, and I'll                |
| 10 | just refresh the Court's memory, the offer that we gave                       |
| 11 | Mr. Abassi was that in consideration for his plea to this                     |
| 12 | information and his agreement to removal from the United States               |
| 13 | upon completion of his sentence the government would move to                  |
| 14 | dismiss the underlying indictment at the time of his                          |
| 15 | sentencing.  Mr. Abassi has in fact executed a document in this               |
| 16 | sort of packet of paperwork that I'll hand to the Court.  This                |
| 17 | paperwork is the request for judicial removal of Mr. Abassi and               |
| 18 | there's a few different documents here, your Honor.  I'll                     |
| 19 | just -- this is a notice to Mr. Abassi that the government                     |
| 20 | intends to request judicial removal.  This is the defendant's                 |
| 21 | plea statement in support of judicial removal, which Mr. Abassi               |
| 22 | and Ms. Shroff executed today.  This is the factual allegations               |
| 23 | in support of judicial removal.  That is a document that I                    |
| 24 | signed.  This is the concurrence of U.S. Immigration and                      |
| 25 | Customs Enforcement signed by their Special Agent in charge and               |

E63FABAP

```
1    this is a proposed order for your Honor's signature of judicial
2    removal and I'll hand this up.
3              And so based on Mr. Abassi's signature on these
4    documents the government is formally filing S1 13 CR 304.
5              (Pause)
6              THE COURT:  Mr. Abassi, have you discussed this
7    document with your lawyer?
8              THE DEFENDANT:  Yes, your Honor.
9              THE COURT:  And did he explain to you exactly what you
10   are giving up?
11             THE DEFENDANT:  Yes, your Honor.
12             THE COURT:  I need you to say it.
13             THE DEFENDANT:  (In English) In English.  Yes, your
14   Honor.
15             THE COURT:  Doesn't have to be English.  It can be
16   your language if you prefer, but I have to hear it from you.
17             THE DEFENDANT:  Yes.
18             THE COURT:  Does "na'm" mean yes?
19             THE INTERPRETER:  "Na'm" means "yes."
20             THE COURT:  Very well.  Do you fully understand what
21   you are giving up when you signed this document of request for
22   judicial removal?
23             THE DEFENDANT:  Yes, your Honor.
24             THE COURT:  Very well.  Have you carefully read the
25   information that was filed against you in this case?  Criminal
```

E63FABAP

```
 1   charge?

 2          THE DEFENDANT:  Yes, your Honor.

 3          THE COURT:  And have you discussed it with your

 4   lawyer?

 5          THE DEFENDANT:  Yes, your Honor.

 6          THE COURT:  Are you satisfied that your lawyer has

 7   given you good advice in this matter?

 8          THE DEFENDANT:  Yes, your Honor.

 9          THE COURT:  Very well.  Then I am going to ask you

10   what you did that you want to plead guilty to having done, what

11   is it that you did?  You don't need to read this document.  I

12   want to know what it is that you are pleading guilty to.

13          THE DEFENDANT:  When I filed --

14          THE COURT:  All right, before I listen to that, I

15   would like you to -- do you know what it means to swear?

16          THE INTERPRETER:  Your Honor, I'm not hearing any

17   verbal responses from Mr. Abassi and I think the court

18   reporter, neither she nor I can write something that is not

19   spoken.

20          THE COURT:  Very well.

21          MS. SHROFF:  Your Honor, may I just have one second

22   with Mr. Abassi?

23          (Pause)

24          THE COURT:  Do you know what an oath is?

25          THE DEFENDANT:  Yes.
```

E63FABAP

| | |
|---|---|
| 1 | THE COURT:  Good.  Very well, I'm going to ask the |
| 2 | court clerk to give you an oath to tell the truth.  He's right |
| 3 | behind you.  So you will have to stand up. |
| 4 | (Defendant sworn) |
| 5 | THE COURT:  Very well.  Do you know what perjury is? |
| 6 | THE DEFENDANT:  Yes. |
| 7 | THE COURT:  What is it? |
| 8 | THE DEFENDANT:  To lie. |
| 9 | THE COURT:  To lie after you swear to tell the truth. |
| 10 | Once you swear to tell the truth if you lie that is perjury. |
| 11 | You have now taken an oath to tell the truth, so if you do not |
| 12 | tell the truth you are guilty of the crime of perjury.  Do you |
| 13 | understand that? |
| 14 | THE DEFENDANT:  I understand, your Honor. |
| 15 | THE COURT:  Very well.  Then I would like you in your |
| 16 | own words to tell me what it is that you actually did that you |
| 17 | want to plead guilty to. |
| 18 | THE DEFENDANT:  Shall I read this paper now? |
| 19 | THE COURT:  No, don't read it.  I want to know what |
| 20 | you know from yourself.  You don't have to read it.  I want to |
| 21 | know what you say you did.  Nobody knows better than you do |
| 22 | what you did that you want to plead guilty to. |
| 23 | MS. SHROFF:  Your Honor, he, Mr. Abassi wrote out the |
| 24 | allocution in his own words with the interpreter.  If that's |
| 25 | okay.  If not, he could just tell you. |

E63FABAP

1        THE COURT:  No, I would prefer that you tell me.

2        THE DEFENDANT:  May I sit?

3        THE COURT:  Yes, you may.

4        THE DEFENDANT:  The truth is, last year, that's 2013,

5    in the month of January my wife and I, we were in Tunisia for

6    the purpose of getting married and the wedding ceremony with

7    the intention of going back to Canada to pursue our studies and

8    to live there.

9        THE COURT:  Right.  You were studying in Canada at

10   that time?

11       THE DEFENDANT:  Yes.  I was studying and teaching.

12       THE COURT:  I see.  Where?  Which university?

13       THE DEFENDANT:  Laval University in Quebec.  In Quebec

14   and Canada.

15       THE COURT:  Do you know French?

16       THE DEFENDANT:  Yes.

17       THE COURT:  Very well.  I ask you because as you know

18   that's a French-speaking university.

19       THE DEFENDANT:  That's correct.  Yes, I'm fluent in

20   French.  I had a student visa that was supposed to be valid

21   until the month of June of 2014.

22       THE COURT:  This was a Canadian visa?

23       THE DEFENDANT:  Yes.  Student visa.  A week after my

24   return to Tunisia from Canada, the Canadian Embassy sent me a

25   message stating that the student visa that had been issued to

E63FABAP

me was issued in error and subsequently my return visa to

Canada was canceled.  And they advised me to go to the Canadian

Embassy in Tunisia to apply for a new visa so that I could

return to Canada.  I did everything that they suggested.

On the 28th of the month of January I went, 2013, I

went again to reapply.  And according to what they had promised

I was supposed to get the visa within a day or two so that I

could go back to Canada with my wife.  And especially with the

fact that I had an airplane ticket and a reservation on the

30th of January to go back to Canada.  But I did not get any

response from them as they promised.  Then they contacted me

and they said that they needed at least a month to study my

file.  However, my wife had to go back to Canada alone because

she had some educational obligations to attend to and also

because we had a rental apartment in Canada and other

necessities to take care of.

On that same day, the 30th of January, a man by the

name of Tamer called me and he said he wanted to see me in

Quebec.  I told him that I was not able to because there has

been issues with my Canadian visa on one hand and also because

my older brother had an automobile accident in which he almost

got killed.  At that time Tamer suggested I go to Canada

through the United States of America.  He said that Canada and

the United States are close allies and the Canadian Embassy

here in the United States is close to his home and that it

E63FABAP

1    would be easy for me to get that visa, a Canadian visa from the

2    United States.  Much, much easier than from Tunisia.

3            I was very hesitant especially because of the

4    automobile accident that my brother had.  So Tamer proceeded to

5    contact my parents, my father and my mother, to convince them.

6    And he kept calling repeatedly almost daily and I remember that

7    he, at some point he called me at a very early hour in the

8    morning because of the time difference and he said that I must

9    come quickly to the United States because on a certain day he

10   was able to pick me up from the airport.  Then he called my

11   wife in Canada on the 26th of February of 2013.  It was a long

12   telephone conversation in order to convince her to talk me into

13   and advise me to listen to him and go to the United States and

14   that he would hire an immigration lawyer for me.  He claimed

15   that there was someone employed by his company who had special

16   ties with the Canadian Embassy.  But my wife said to him no,

17   Ahmed is already in the process of getting a visa from the

18   Canadian Embassy, let's be patient and wait and perhaps he

19   would get that visa eventually.  His response was no, he has to

20   hurry up and come to the United States quickly before he gets a

21   refusal red stamp on his passport from Canada because once

22   there is such a red stamp on his passport he wouldn't be able

23   to go to neither the United States nor Canada.  But my wife

24   maintained her position that I should wait in Tunisia for the

25   Canadian Embassy's reply.

E63FABAP

1              He continued to call me and contact my mother as well.

2     I remember him calling my mother Mama, send Ahmed so that he

3     could reunite with his wife and continue his education in

4     Canada.  And at that time there was an atmosphere of confusion

5     in our house in Tunisia because of my sudden situation with the

6     visa and my brother's automobile accident.  And also there was

7     pressure from my professors in Canada who were asking me when I

8     was going to go back to Canada and also my employers in Canada.

9     So then I started to consider what Tamer advised me to do, to

10    go to the American Embassy and apply for a visa and state in my

11    visa application to the United States that my intent was to

12    engage in business.  And at that point I lied.  Because my

13    entire purpose was to return to Canada and to unite with my

14    wife and continue my education.  And at home in Tunisia when

15    waiting for the visa from Canada appeared to be a lengthy

16    process they advised me to accept Tamer's advice, especially

17    with Tamer calling day and night and him playing on an

18    emotional sentiment with my father, saying that we Muslims

19    should support one another.  If a Muslim man like me doesn't

20    help a Muslim like Ahmed, who is going to help him.

21            Then on March 18 I came to the United States after

22    getting the visa through lying.  I lied in the application.

23            THE COURT:  What did you lie about?

24            THE DEFENDANT:  I lied when I said that the purpose of

25    the trip was business, real estate business.  But my purpose,

E63FABAP

1    my intent was to return to Canada.  That's after he promised me

2    that he would provide me with an immigration attorney.

3              THE COURT:  And then what happened?

4              THE DEFENDANT:  March 18th of 2013 I landed in

5    America.

6              MR. FERRARA:  May I -- I apologize for interrupting.

7    May I follow up in this allocution in terms of your Honor's

8    question as to what happened next?

9              THE COURT:  No.

10             MR. FERRARA:  It's important in the allocution of the

11   charges, I think it's important to hear from Mr. Abassi on two

12   points.

13             THE COURT:  That we can get to.  I wanted to first

14   hear him.

15             MR. FERRARA:  Understood.

16             THE COURT:  Where did you arrive in the United States?

17             THE DEFENDANT:  JFK.

18             THE COURT:  And what did you do at JFK?

19             THE DEFENDANT:  At JFK I was inspected by someone who

20   asked me questions, many questions.  And Tamer was waiting for

21   me.

22             THE COURT:  I see.  Your brother was here?

23             THE DEFENDANT:  I don't have any brothers in the

24   United States.

25             THE COURT:  Who is Tamer?  I thought you said he was

E63FABAP

1   your older brother.

2           THE DEFENDANT:  No, my brother was the one in Tunisia

3   who had the automobile accident.

4           THE COURT:  I understand.  But he has never been in

5   Canada, he was not telling you about Canada?

6           THE DEFENDANT:  My brother, no.

7           THE COURT:  I see.

8           THE DEFENDANT:  Tamer who was contacting me was the

9   undercover FBI agent.

10           THE COURT:  And who was Tamer?

11           THE DEFENDANT:  The FBI undercover agent.

12           THE COURT:  I see.  And how did you meet him?

13           THE DEFENDANT:  We met in Canada.  He was introduced

14   to me in Quebec, Canada.

15           THE COURT:  And after you went back to Tunisia he got

16   in touch with you?

17           THE DEFENDANT:  Yes.

18           THE COURT:  And that had nothing to do with your

19   brother's accident?

20           THE DEFENDANT:  No.

21           THE COURT:  I see.

22           MS. SHROFF:  Your Honor, I think Mr. Abassi was trying

23   to explain to the Court that when Tamer, which is the

24   undercover FBI agent, contacted him to get him to come to the

25   United States Mr. Abassi was dealing with a lot of issues

E63FABAP

1     including his wife being back in Canada, them being newly wed,

2     his brother having suffered a very serious car accident and I

3     think Mr. Abassi was trying to communicate the sentiment that

4     he was under a lot of emotional pressure and turmoil at the

5     time that the FBI was trying to convince him to come to the

6     United States.  I think he was telling the Court the story of

7     how it unfolded.

8              THE COURT:  I see.  But Tamer had no connection with

9     your school in Canada, right?

10             THE DEFENDANT:  No.

11             THE COURT:  Did you ask him why he was so interested

12    in what you were doing?

13             THE DEFENDANT:  No.  I didn't.

14             THE COURT:  All right.  And you came here?  And you

15    were questioned at the airport.

16             THE DEFENDANT:  Yes.

17             THE COURT:  And then what happened?

18             THE DEFENDANT:  After I was questioned at the airport

19    I was picked up by Tamer.

20             THE COURT:  That is, you were detained, is that right?

21             THE DEFENDANT:  No.  I got arrested on April 22, 2013.

22             THE COURT:  Arrested for what?

23             THE DEFENDANT:  Because of these charges.

24             THE COURT:  What charges?

25             THE DEFENDANT:  That I lied in my visa application.

E63FABAP

```
 1                THE COURT:  What did you lie about?  Are you talking
 2      about your application to Canada or your application to the
 3      United States?
 4                THE DEFENDANT:  My application to the United States.
 5                THE COURT:  All right.  And then what happened?
 6                THE DEFENDANT:  Tamer offered me an apartment in
 7      Manhattan.
 8                THE COURT:  Where was Tamer when you landed at JFK?
 9                THE DEFENDANT:  At JFK waiting for me.
10                THE COURT:  He was waiting for you when you landed?
11                THE DEFENDANT:  Yes, he was, your Honor.
12                THE COURT:  And he told you he would get you an
13      apartment?
14                THE DEFENDANT:  Yes.  An apartment fully equipped with
15      a computer and all communication equipment so I could continue
16      my studies and communicate with my family in Tunisia and
17      Canada.
18                THE COURT:  And what happened then?
19                (Pause)
20                THE COURT:  I don't think you should tell him what
21      happened to him.
22                MS. SHROFF:  Your Honor, I'm just -- because it was
23      several months between the time that he came in, which was
24      January and he being arrested in April, I just told him to
25      compress what happened in four months, otherwise he would
```

E63FABAP

 1    explain to you daily what happened.  Mr. Abassi is not being

 2    told what to say.

 3              THE COURT:  Okay.

 4              MS. SHROFF:  I just wanted him to condense it for the

 5    Court.

 6              MR. FERRARA:  Your Honor, if I may, in terms of just

 7    what questions the Court could pose, again, I think we ought to

 8    hear this from Mr. Abassi, I agree and of course Mr. Abassi

 9    will have plenty of time to speak to your Honor at sentencing,

10    but in terms of what happened next for purposes of this plea I

11    think there are two important discrete time periods.  The first

12    is when Mr. Abassi was questioned by immigration at JFK he

13    repeated that he was here to be a realtor.  I think we should

14    hear from him on that, that's Count One.  And as to Count Two,

15    I believe Mr. Abassi just referred to this, but he filled out

16    an application for a green card and again repeated the false

17    statement that he was here to be a realtor.  And those are the

18    two false statements that underlie Count One and Count Two

19    respectively.

20              THE COURT:  Were you asked about what you were

21    planning to do here?

22              THE DEFENDANT:  Yes.

23              THE COURT:  And what did you say?

24              THE DEFENDANT:  I lied to them.  I said I was going to

25    work in the real estate field.

E63FABAP

```
 1                    THE COURT:  And that was not true?

 2                    THE DEFENDANT:  It was not true.

 3                    THE COURT:  What were you planning to do?

 4                    THE DEFENDANT:  To work with Tamer on the Canadian

 5       visa so that I could go back to Canada as he promised me.

 6                    THE COURT:  You told that to Tamer?

 7                    THE DEFENDANT:  Of course.

 8                    MR. FERRARA:  And then in April, about a few weeks

 9       later in April is when Mr. Abassi with Tamer in the room filled

10       out the green card application and repeated the same false

11       statement.

12                    THE COURT:  Did you hear that?  Did you understand

13       what was just said?

14                    THE DEFENDANT:  Yes.  I heard.

15                    THE COURT:  Is that what happened?

16                    THE DEFENDANT:  Yes.

17                    THE COURT:  So you did fill out a green card

18       application?

19                    THE DEFENDANT:  Yes.

20                    THE COURT:  And did you lie on the application?

21                    THE DEFENDANT:  Yes.

22                    THE COURT:  What did you say that was false?

23                    THE DEFENDANT:  That my occupation was property

24       manager.

25                    THE COURT:  Now, were you a student or a teacher in
```

E63FABAP

1  Canada?

2          THE DEFENDANT:  Both.

3          THE COURT:  But you knew what you told him, Tamer, was

4  untrue?

5          THE DEFENDANT:  No.

6          THE COURT:  You didn't tell him?

7          MR. FERRARA:  I'm sorry, your Honor, just to clarify

8  what I was saying --

9          THE COURT:  There's too much exchange here.  I wanted

10  to hear it from the defendant.

11          MR. FERRARA:  I just thought your Honor's question

12  might have been slightly confusing because what was untrue is

13  not what Mr. Abassi -- what the government alleges is untrue is

14  not what Mr. Abassi told Tamer.  What the government is

15  alleging was untrue for the purposes of the information is what

16  Mr. Abassi told immigration and what he put on the form for the

17  green card.

18          THE COURT:  What was the question you answered on the

19  form for the green card that was untrue?

20          THE DEFENDANT:  There was a question about my current

21  occupation and my answer was property manager.

22          THE COURT:  I see.

23          THE DEFENDANT:  And that's not true.

24          THE COURT:  What is a property manager?

25          THE DEFENDANT:  Someone who runs his real estate

E63FABAP

1   properties.

2           THE COURT:  And did anybody ask you whose properties

3   you were running?

4           THE DEFENDANT:  No.

5           THE COURT:  I see.  You just wrote property manager as

6   your occupation?

7           THE DEFENDANT:  Because of the fact that Tamer was in

8   the real estate business, he told me to write property manager

9   in the occupation.  To facilitate the green card process for

10  me.

11          THE COURT:  I see.  So you wrote that because that's

12  what Tamer told you to say.

13          THE DEFENDANT:  Yes.  Yes, your Honor.

14          THE COURT:  And you knew that was false.

15          THE DEFENDANT:  Yes, I did, your Honor.

16          THE COURT:  And then what happened?

17          THE DEFENDANT:  I filed that application on April 15th

18  and then on April 22nd I got arrested.

19          THE COURT:  And where were you taken?

20          THE DEFENDANT:  There was about seven days of

21  interrogation.

22          THE COURT:  You mean somebody came and asked you

23  questions?

24          THE DEFENDANT:  Three or four individuals came.

25          THE COURT:  And Tamer was not one of them?

E63FABAP

1               THE DEFENDANT:  No.

2               THE COURT:  Did they tell you who they were?

3               THE DEFENDANT:  Yes.

4               THE COURT:  Who did they tell you they were?

5               THE DEFENDANT:  FBI agents.

6               THE COURT:  All right.  And how many days was that?

7               THE DEFENDANT:  About seven days.

8               THE COURT:  And then what happened?

9               THE DEFENDANT:  I was arraigned in court on May 2nd

10      and I was shown the charges.

11              THE COURT:  What charges?

12              THE DEFENDANT:  These charges.

13              THE COURT:  You were arraigned in this court?

14              THE DEFENDANT:  Yes.

15              THE COURT:  And you were charged with making false

16      statements, is that right?

17              THE DEFENDANT:  Yes.

18              MR. FERRARA:  I apologize, your Honor.  He is now

19      charged with making false statements.  At the time it was a

20      different charge.

21              THE COURT:  Well, then he can tell me that.  What were

22      you charged with?

23              THE DEFENDANT:  The charge was fraud and misuse of

24      visa application.

25              MR. FERRARA:  Your Honor, the government is satisfied

E63FABAP

1   with that allocution.  I would just, as to Count One, I

2   understand Ms. Shroff is prepared to waive venue as to Count

3   one.  As to Count Two I believe the defense will stipulate that

4   Mr. Abassi was in Manhattan when he filled out the green card

5   application.

6            THE COURT:  So this is a charge based on what happened

7   after he arrived at JFK?

8            MR. FERRARA:  Yes, your Honor.  Count One is

9   predicated on the statement to immigration officials that he

10   was here to work as a realtor.  Count Two is predicated on the

11   statement in the green card application that he worked as a

12   property manager.

13            THE COURT:  And this was a written application?

14            MR. FERRARA:  The green card application was written.

15   The statement to immigration officials was oral.

16            THE COURT:  All right.  And that was not true, is that

17   right, what you wrote?

18            THE DEFENDANT:  It was not true, your Honor.

19            THE COURT:  And you knew it was not true?

20            THE DEFENDANT:  I did, your Honor.

21            THE COURT:  And you understood that if you told a lie

22   to an agent you were running the risk of being refused entry?

23            THE DEFENDANT:  I knew that, yes.

24            THE COURT:  Very well.

25            MR. FERRARA:  May I just ask the defense to go on the

E63FABAP

1    record as to venue, your Honor?  I'd just like them to --

2              THE COURT:  JFK is not Manhattan.

3              MR. FERRARA:  That's correct.  We have a theory as to

4    venue for Count One, but I believe Ms. Shroff will waive.  I

5    don't want to waste the Court's time if Ms. Shroff is waiving

6    venue as to Count One.

7              MS. SHROFF:  Your Honor, Mr. Abassi waives venue as to

8    Count One.  In any event, under U.S. v. Calderon venue is

9    waived once a plea of guilty is entered, but he waives anyway.

10   As to Count Two, venue is proper because Mr. Abassi was in fact

11   in the undercover agent's home on West Street, which is in

12   Manhattan.

13             THE COURT:  At the time he made the statement?

14             MS. SHROFF:  At the time he made the false statement.

15             THE DEFENDANT:  Yes.

16             THE COURT:  Very well.  Now, do you remember hearing

17   me say before that under the Constitution of the United States

18   in order to be tried for a crime you have to be indicted by a

19   Grand Jury?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And we have here a document accusing you

22   of giving the false statement you talked about.  But it's not

23   an indictment by a Grand Jury.  It's a charge by the United

24   States Attorney's Office.  Do you understand that?

25             THE DEFENDANT:  I understand the difference.

E63FABAP

1        THE COURT:  Now, we have here -- I'm looking for a

2  waiver of indictment.

3        MR. FERRARA:  May I -- your Honor, here's another

4  original.

5        THE COURT:  Thank you.  Do you understand how

6  important it is whether you have been indicted by a Grand Jury

7  under our law?

8        THE DEFENDANT:  I understand.

9        THE COURT:  And when you signed this document did you

10  understand what it meant?

11        THE DEFENDANT:  Yes.  I understood, your Honor.

12        THE COURT:  Why don't you explain to me what it means?

13  This document says that you want to give up your right to be

14  indicted by a Grand Jury.  Do you understand that?

15        THE DEFENDANT:  I understood.

16        THE COURT:  And that's a very important right.  Do you

17  understand that?

18        THE DEFENDANT:  Yes.

19        THE COURT:  Have you discussed that carefully with

20  your lawyer?

21        THE DEFENDANT:  Yes.  Yes, your Honor.

22        THE COURT:  And with understanding you want to do

23  that?

24        THE DEFENDANT:  Yes, your Honor.

25        THE COURT:  Very well.  Is this your signature?

E63FABAP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Let me show you.

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Very well.  So you are giving up your

5     right to be charged by a Grand Jury.

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Very well.  Do you understand that if you

8     go to trial instead of entering a plea of guilty that you are

9     entitled to be tried before a jury of twelve persons?

10          THE DEFENDANT:  Yes, I know that, your Honor.

11          THE COURT:  And at that trial you will have the

12     assistance of the Court to subpoena witnesses in your behalf?

13          THE DEFENDANT:  Yes.  I'm aware of that your Honor.

14          THE COURT:  And you are entitled at that trial not to

15     say anything yourself so that you cannot be compelled to

16     incriminate yourself.  Do you understand that?  You may remain

17     silent at trial.

18          THE DEFENDANT:  I am aware of that, your Honor.

19          THE COURT:  Very well.  And if you enter a plea of

20     guilty to the charge here you are giving up that right, all of

21     the rights connected with trial.  Do you understand that?  And

22     you will stand convicted of the charge against you; making a

23     false statement in order to get a green card.

24          THE DEFENDANT:  I'm aware of that, your Honor.

25          THE COURT:  Very well.  You understand that if you

E63FABAP

1    cannot afford a lawyer you will be provided with a lawyer?

2              THE DEFENDANT:  I'm aware of that, your Honor.

3              THE COURT:  Fine.  Have you reviewed with your lawyer

4    all of the rights you are giving up when you enter a plea of

5    guilty?

6              THE DEFENDANT:  Yes, I have, your Honor.

7              THE COURT:  Very well.  After our discussion,

8    Mr. Abassi, I am satisfied that you do understand what you are

9    doing and what you are giving up when you enter a plea of

10   guilty here and I will enter your plea of guilty.

11             MR. FERRARA:  Your Honor, before --

12             THE COURT:  First we need -- first I need to what?

13             MS. SHROFF:  Your Honor, may I just put on the record

14   that I have reviewed with Mr. Abassi the Pimentel letter

15   provided by the government dated April 15, 2014.  Mr. Abassi is

16   aware that the guidelines that he faces are a minimum of zero

17   and a maximum of six months.  The sentencing guidelines could

18   be different if the government prevails in applying the

19   terrorism enhancement.  I have reviewed with him the guidelines

20   that could be in place if the terrorism enhancement were to

21   apply, which would then --

22             THE COURT:  But we all agree that the guidelines are

23   not binding, they are advisory.

24             MS. SHROFF:  That's correct, your Honor.  I have also

25   advised Mr. Abassi that only the Court would be able to decide

E63FABAP

the sentence and Mr. Abassi could confirm for the Court that no

promises have been made to him about the ultimate sentence, but

the statutory maximum sentence that he faces is six years.

He also has been advised, your Honor, that he faces

supervised release of a year on Count Two and a maximum term of

supervised release of three years on Count One; a maximum fine

of $250,000 on Count One and a maximum fine of $100,000 on

Count Two.

I have also advised him that he would under any

circumstances have to pay $125 in total of a mandatory special

assessment.  And, finally, I have advised him that the Court

could sentence him to anything between zero to a maximum of six

years and the Court has the discretion to impose any sentence

it so chooses.

THE COURT:  Very well.

MR. FERRARA:  May I ask the Court to just put a few

more questions to Mr. Abassi, your Honor?

THE COURT:  Yes.

MR. FERRARA:  I would just ask the Court to advise

Mr. Abassi that he is giving up the right to plead not guilty,

that he would be presumed innocent until the government proved

his guilt beyond a reasonable doubt, he would be giving up the

right to trial counsel and to confront and cross-examine

witnesses, and finally --

THE COURT:  We've just been through all of the rights

E63FABAP

 1   connected with trial which he understands that he gives up when

 2   he enters a plea of guilty and he stands convicted as if he had

 3   had a full trial and a jury had brought in a verdict of guilty.

 4             MR. FERRARA:  Just to be safe, your Honor --

 5             THE COURT:  I don't know what you mean by "to be

 6   safe."

 7             MR. FERRARA:  For instance, I'm not sure your Honor

 8   mentioned confrontation and cross-examination of witnesses

 9   which the defendant has to explicitly waive under Rule 11BE1.

10   Just to be clear, your Honor, I want to be 100 percent

11   certain --

12             THE COURT:  You understand that you are giving up all

13   of the rights that go with a trial before a jury?

14             THE DEFENDANT:  Yes, I understand, your Honor.

15             MR. FERRARA:  And, finally, your Honor the question

16   Ms. Shroff said, Mr. Abassi needs to say he has not been forced

17   or threatened to plead guilty.

18             THE COURT:  Well, why do you want to plead guilty?

19   Has anybody threatened you about the --

20             THE DEFENDANT:  No.

21             THE COURT:  Has anybody promised you anything?

22             THE DEFENDANT:  No, your Honor.

23             THE COURT:  Why do you want to plead guilty?

24             THE DEFENDANT:  Because I in fact lied in the

25   application.

E63FABAP

1          THE COURT:  You have no doubt about that?

2          THE DEFENDANT:  No doubt.

3          THE COURT:  Very well.

4          MR. FERRARA:  Thank you, your Honor.  Nothing further

5    from the government.

6          THE COURT:  All right.  Now I see the defendant,

7    excuse me, the government would like to request judicial

8    removal.

9          MR. FERRARA:  Yes, your Honor.

10         THE COURT:  Are you requesting that today?

11         MR. FERRARA:  Your Honor, I think that we have

12   requested it today but to the extent that your Honor -- I don't

13   think your Honor needs to so order this order right now.  If

14   your Honor wants to take time to look at it --

15         THE COURT:  Well, it's an unsigned order that I have.

16   I mean, an unsigned application notice.

17         MR. FERRARA:  I apologize, I sent this to your Honor's

18   deputy just so your Honor would be familiar with it.  This is

19   the signed version right here.  Your Honor, the government is

20   happy to collect all these documents and present them to your

21   deputy after the conference to make sure it's all very

22   organized for you to review later.

23         THE COURT:  All right.  Do you understand that the

24   government has requested that I direct that you be removed from

25   the United States and I assume returned to Tunisia?

E63FABAP

1              MR. FERRARA:  Tunisia.  Correct, your Honor.

2              THE DEFENDANT:  Yes.  I read that and I accept being

3      deported back to my country Tunisia.

4              THE COURT:  These days we call it removed.  The

5      statute used to say deported.  It now says removed to Tunisia,

6      but it's the same thing.

7              THE DEFENDANT:  Thank you.

8              THE COURT:  Very well.  Is there anything further?

9              MS. SHROFF:  Yes, your Honor.  On behalf of Mr. Abassi

10     I would ask the Court to order an expedited PSR.

11             THE COURT:  I will certainly direct a PSR.  How

12     expedited it will turn out to be I cannot promise.  We have had

13     a little bit of slowness for various reasons.

14             MS. SHROFF:  I understand, your Honor, but on a

15     recommendation from the Court --

16             THE COURT:  I do so recommend.  I recommend that it is

17     in the interests of justice that Mr. Abassi be, receive a

18     presentence report and his counsel receive a presentence report

19     as soon as possible.

20             MR. FERRARA:  Without objection.

21             THE COURT:  And I will set a date for sentence.

22             MS. SHROFF:  Thank you, your Honor.

23             THE COURT:  I need the calendar.

24             (Pause)

25             THE COURT:  A month from today would be July 8.  We

E63FABAP

1   have had a plea from the probation department not to make it

2   quite that fast.

3          MS. SHROFF:  That's okay, your Honor.  He's been in 14

4   months.  I agree that July 8 might be asking too much of

5   probation but maybe the month after would be fine.

6          THE COURT:  Fine.  Fine.  Well, we can make it just a

7   few weeks later.

8          MS. SHROFF:  That's fine, your Honor.  I think the

9   government is aware we're going to ask for time served.

10         THE COURT:  July 23 at 10:30 in the morning.  Okay.

11  I'm reminded I should make it 11:30.  And I do direct that a

12  presentence report be prepared in time for that sentence.

13         MS. SHROFF:  Thank you, your Honor.

14         THE COURT:  Very well.  All right, is there anything

15  further?

16         THE DEFENDANT:  No thank you.

17         MS. SHROFF:  Thank you, your Honor.

18         THE COURT:  This means that you will always be

19  truthful.  I wish you lots of good luck.

20         THE DEFENDANT:  I will try to be.

21         THE COURT:  Good.  Very good.

22         (Adjourned)

23

24

25