UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA          :

       - v -                      :
                                            S1 13 CR 304 (MGC)
AHMED ABASSI,                     :

              Defendant.          :

- - - - - - - - - - - - - - - - - x

**REPLY SENTENCING MEMORANDUM ON BEHALF OF Mr. ABASSI**

We write in brief reply to the government's sentencing submission of July 14, 2014, which seeks a sentence greater than the advisory range of zero to six months imprisonment. Mr. Abassi has already served a sentence far higher than the guideline range. He has served 15 months of detention so far. Thus, the government agrees that a sentence of time served falls within their requested above-guideline sentence in this case. Such a sentence is not only above the maximum guideline sentence, it is twice that and 3 months more. There is no disagreement and all parties agree that a sentence of time served is sufficient. This is especially the case given the following undisputed facts:

1. Mr. Abassi did not seek to come to the United States.

2. In fact, Mr. Abassi was bent on returning to his wife in Cananda when Tamer, an FBI agent, lured him to the United States under a false pretense; come to America and I will help you re-unite with your wife.

3. But for Tamer's actions, Mr. Abassi would never have been able to get a visa to enter the United States.

4. It was Tamer who sought out Mr. Abassi, called his mother, father, and wife and told each of them to send Mr. Abassi to the United States. It was Tamer who and induced Mr. Abassi to apply for both a business visa and then a green card.

5. Tamer, the FBI agent, also arranged for another individual - Mr. Esseghaier - to travel to the United States so that Mr. Abassi would have a co-conspirator.

6. While Mr. Esseghaier had many plans and plots of terrorism, Mr. Abassi refused to commit to join in any one of them.

7. So adamant was Mr. Abassi in his refusal to commit to even a small act of participation that Mr. Esseghaier had several fights with Mr. Abassi during which he called Mr. Abassi "useless" and not a "true brother."

8. So enraged was Mr. Eseghaier at Mr. Abassi's refusal to participate that he stopped speaking with Mr. Abassi about his plans.

9. Mr. Esseghaier so mistrusted Mr. Abassi that he wanted him thrown out of the apartment and New York.

10. Mr. Abassi refused to commit to participate in every plan suggested to him. He refused to commit to the plans suggested by the FBI agent and he refused to commit to the plans suggested by Esseghaier.

11. He refused to commit to participate in every plan suggested to him whether big or small. Mr. Abassi made up reasons to say no, but NO remained his consistent answer.

12. Mr. Abassi came to the United States as he believed that it was his only way back to Canada and his wife, who lived there.

13. Mr. Esseghaier recognized Mr. Abassi's "true motive" and told the FBI agent over and over again that Mr. Abassi was only interested in his studies, his life, and his wife. Mr. Essegahaier warned the FBI agent that Mr. Abassi was not a true brother and was only looking for a way back to Canada.

14. In telling the FBI agent that he had been speaking with an important person in the Middle East, Mr. Abassi also told him that he had looked this person up on the internet. In fact, it was not a person he had ever met. There is no evidence that Mr. Abassi knew a single person associated with a foreign terrorist organization.

15. When unable to coax Mr. Abassi into terrorism and seeing his investigation dry up, the FBI agent set the stage for Mr. Abassi to make a false statement – it was the FBI agent who suggested that Mr. Abassi apply for a business visa and then for a green card.

16. Applying for a green card was the FBI agent's idea and not one that Mr. Abassi conjured up.

17. It was the FBI agent who found the application form for the green card and it was the FBI agent who "helped" Mr. Abassi with the filing of the form.

18. Throughout this time, Mr. Abassi was busy applying for jobs in Canada, emailing his professors and working on his Ph.D thesis and talking to his wife more than 3 times a day. It was during this time that he had several job interviews, including a telephonic interview with Alcoa in Canada.

19. It was the FBI agent who talked incessantly about his own monetary donations to the Muslim cause. While Mr. Abassi may have expressed his sentiments on the subject, he NEVER sent a single dollar – Canadian or American to Nusrah or to any other terrorist organization.

20. This inaction is in direct contrast to the Mr. Essegahaier who gave the FBI agent $3,000 and told him to give it to a terrorist organization in Syria or Mali.

21. Mr. Abassi had hundreds if not thousands of conversations about the Quran, philosophy, jihad, and the dictator Bashaar Assad. Each of these conversations was started and supported by the FBI agent. And, regardless of all his talk, he never once undertook a single act.

The government cannot dispute these facts. In fact, they concede almost all of these facts in their July 14, 2014, submission to the Court.[1] They then absurdly argue that even though Mr. Abassi refused to participate in any act of terrorisim, because his refusal was for the wrong reasons, he should be punished as though he had agreed. The government further argues that because Mr. Abassi has "extremist" views he is a dangerous person and should be punished for more than 6 months.

---

[1] To the extent the government takes issue with any of the facts, we ask for a <u>Fatico</u> hearing. We have previously advised the government to make FBI agent Tamer available for testimony.

## CONCLUSION

In the United State of America we do not punish people for having bad, racist, extremist or vile thoughts. We also do not punish people because the government believes them to be dangerous if they have not committed a dangerous act. Unlike many other countries, we are a nation of laws. We punish people when the government has met its burden of proving that an individual engaged in illegal conduct.

Mr. Abassi's punishment should depend on the acts he committed - false statements - not on the government's opinion that he may have in the future committed crimes or because he is "dangerous."

For all the reasons stated in the Pre-sentence Report the govenremnt and the defense's submission of July 14, 2014, and this letter, the Court should impose a sentence of time served. Probation recommends such a sentence. Not only has Mr. Abassi served 15 months in custody, four of those months were served in the segregated housing unit. And, he will spend several more months in custody awaiting deportation, time for which he will get no credit.

Dated: New York, New York
July 15, 2014

Respectfully submitted,

David E. Patton, Esq.
Federal Defenders of New York, Inc.

By: //SS//
Sabrina Shroff, Esq.
Attorney for Abassi Abassi
52 Duane Street - 10th Floor
New York, NY 10007
Tel.: (212) 417-8713